**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re: Construction Equipment Rental Antitrust Litigation** | **MDL No.** |

**BRIEF IN SUPPORT OF MOTION FOR TRANSFER AND
COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Movant, Plaintiff Mack's Junk Removal, LLC (hereinafter referred to as "Mack's Junk Removal" or "Plaintiff"), respectfully moves the Judicial Panel on Multidistrict Litigation ("Panel") to transfer and centralize the actions listed in the Schedule of Actions, and subsequent tag-along actions, to the Honorable Monica Ramirez Almadani, United States District Court Judge for the Central District of California, who currently presides over the action brought by Plaintiff, for coordinated or consolidated pretrial proceedings.

**I.     Background**

Construction equipment rental is a significant segment of the construction industry in the U.S. Equipment rental companies purchase approximately one-third of all construction equipment sold in North America. Individuals and entities often rent rather than purchase the equipment they need for construction projects because renting is usually more affordable, especially for smaller companies or for projects that require equipment for a short period of time. Buying equipment necessitates a significant up-front investment, as well as ongoing storage and maintenance costs, while renting requires paying a reduced price only during the duration the equipment is used, freeing up capital for other needs.

Construction equipment rental companies, including the Equipment Rental Company

Defendants[1], are entities operating in the business of rental of construction equipment.

Plaintiff Mack's Junk Removal is a New York limited liability company with a principal place of business in West Seneca, NY. During the class period, Mack's Junk Removal rented construction equipment directly from one or more of the Defendants for their use in their junk removal, demolition, and pressure washing services

This lawsuit arises from an unlawful agreement among Defendants to fix, raise, and or maintain the rental rates they charge for construction equipment in the United States. This conspiracy has led to artificially inflated prices for construction equipment rentals that Plaintiff and other class members paid across the United States.

Beginning at least as early as March 31, 2021, the exact date being unknown to Plaintiff at this time, Defendants conspired to artificially inflate the rental rates for construction equipment in the United States. To effectuate this illegal agreement, and among other methods, Defendants relied upon the "benchmarking" services of Rouse Service, LLC, through which they disseminated competitively sensitive information, monitored each other's compliance under the conspiracy, and enforced their illegal agreement. By acting collectively through Rouse Services LLC, the Equipment Rental Company Defendants and their co-conspirators eliminate competition among themselves.

As a result of Defendants' unlawful agreement, direct renter of construction equipment in the United States and its territories, including Plaintiff and the Class members, paid supra-competitive prices for the construction equipment owned by Defendants in the United States and

---

[1] United Rentals, Inc., Sunbelt Rentals, Inc., Herc Rentals Inc., Herc Holdings Inc., H&E Equipment, Services, Inc., Sunstate Equipment Co., LLC, Equipmentshare.com Inc., and The Home Depot, Inc. are the "Equipment Rental Company Defendants," and together with RB Global, Inc. and Rouse Services LLC (hereinafter "Rouse Defendants"), are collectively referred to as "Defendants."

its territories beginning no later than March 31, 2021, and running through the present (the "Class Period"), in violation of Sections 1 of the Sherman Act, 15 U.S.C. §§ 1.

To date, eight antitrust class actions (hereinafter the "Related Actions"), including Plaintiff's action, were filed on behalf of direct renters of construction equipment.[2] All the actions filed to date allege violations of the federal antitrust law. Transfer of all the filed actions to the Central District of California is essential so that they can be centralized for pretrial proceedings, which will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judges in the other districts. The Related Actions arise out of the same factual events and allege nearly identical conduct by a substantially similar group of defendants and their co-conspirators.

The Central District of California is the most efficient and appropriate forum for this litigation. One of the Defendants, Rouse Service LLC, the "hub" that provides service to facilitate the exchange of competitively sensitive information among all Defendants is headquartered in the Central District of California.[3] Almost all Equipment Rental Company Defendants have established the highest or the second highest number of stores in the state of California among all other states.[4] The Central District of California has vast experience successfully managing multidistrict litigation as described more fully below. Transfer to the Central District of California for consolidated or coordinated pretrial proceedings before the Honorable Monica Ramirez Almadani, United States District Court Judge for the Central District of California, is warranted.

---

[2] Among the eight Related Actions, two are currently pending in the Central District of California, five were filed in the U.S. District Court for the Northern District of Illinoi, and one was filed in the U.S. District Court for the Southern District of Iowa.
[3] Defendant Rouse Services LLC ("Rouse Service") is headquartered at 8383 Wilshire Boulevard, Suite 900l, Beverly Hills, California 90211.
[4] California, among all other states, has the third largest number of store presence for Defendant H&E Equipment Services, Inc.

II.     **Argument**

    **A. Transfer of the Actions to One Court for Coordination or Consolidation is Appropriate Under 28 U.S.C. § 1407.**

Civil actions which are pending in different district courts and involve overlapping factual and legal issues are particularly appropriate for transfer and centralization in a single district, and the Panel has consistently determined that related antitrust cases satisfy § 1407's requirements.[5]

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, Section 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

*Id.*; *see also In re Nifedipine*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003). The purpose of multidistrict litigation is to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968); *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017)

---

[5] *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 988 F. Supp. 2d 1362, 1363 (J.P.M.L. 2013) ("Aluminum") (transferring related antitrust cases to the Southern District of New York and finding centralization appropriate because "[a]ll actions share factual questions arising from allegations that defendants violated federal antitrust law . . ."). *See generally* Federal Judicial Center, Multidistrict Litigation Manual (Fourth) § 5:1 (2010) ("Antitrust actions present a category of actions that the Panel almost inevitably orders transferred if there are multiple actions pending in different districts.").

(same); *In re Capital One Customer Data Sec. Breach Litig.*, 396 F. Supp. 3d 1364, 1365 (J.P.M.L. 2019) (same). Consolidation of actions involving common factual questions makes sense when numerous judges are asked to address similar pretrial matters and resolve similar pretrial motions involving similar fact patterns. *See In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006). "Centralization will permit all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands." *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007).

Currently, there are already the following additional seven pending federal actions in three different districts and, presumably, more to come:

- *AXG Roofing, LLC v. RB Global, Inc. et al*, 1:25-cv-03487-SLE (N.D. Ill.) (April 1, 2025)

- *Immediate Appliance Service, Inc. v. RB Global, Inc. et al*, 1:25-cv-04139-AMP (N.D. Ill.) (April 16, 2025)

- *Kris Swanson Construction LLC v. RB Global, Inc. et al*, 1:25-cv-04236-ARW (N.D. Ill.) (April 17, 2025)

- *Signs v. Rouse Services LLC et al*, 4:25-cv-00158-SMR-WPK (S.D. Ia.) (April 29, 2025)

- *Haxton Masonry, Inc. v. RB Global, Inc. et al*, 2:25-cv-03902 (Cen. D. Cal.) (May 1, 2025)

- *IPCS Corp v. RB Global, Inc. et al*, 1:25-cv-04825-SLE (N.D. Ill.) May 1, 2025)

- *IZQ Construction LLC v. RB Global, Inc. et al*, 1:25-cv-04872 (N.D. Ill.) (May 2, 2025)

The Related Actions share common questions of fact and law, as well as substantially similar allegations. Each of the Related Actions alleges that the Defendants and their co-conspirators conspired to fix, raise, and or maintain the rental rates of construction equipment that were rented directly by plaintiffs in the United States, in violation of federal antitrust laws. Therefore, the Related Actions should be transferred and centralized in one judicial district.

The transfer of the Related Actions to the Central District of California for consolidated or coordinated proceedings is appropriate because common questions of fact exist, and consolidation or coordination before one court will ensure efficient management of the litigation and avoid inconsistent rulings on these issues impacting numerous plaintiffs across the United States.

### 1.     The Actions Involve Common Factual Questions.

Here, all of the Related Actions include the following common questions: (1) the identity of the conspiracy's participants; (2) the duration of the conspiracy; (3) the overt acts that the Defendants and their co-conspirators took in furtherance of the conspiracy, (4) whether the alleged actions of the Defendants and co-conspirators caused injury to the property of the Plaintiff and class members; and (5) the appropriate measure of damages sustained by Plaintiff and members of the class. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) ("To those defendants opposing transfer because they wish to litigate the arguably narrower or more questionable claims against them without entanglement in a litigation that they consider to be much broader in scope, we point out that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer."). The facts supporting Defendants' anticompetitive conduct in the construction equipment rental market applies equally to all plaintiffs.

Transfer and consolidation or coordination will provide a consistent and uniform resolution to the common factual issues, which will facilitate the efficient adjudication of the Related Actions even considering any differences that may exist. "[T]ransfer under Section 1407 has the salutary effect of placing all actions in th[e] docket before a single judge who can formulate a pretrial program that: (1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F. Supp. 1403, 1404

(J.P.M.L. 1976); and (2) ensures that pretrial proceedings will be conducted in a manner leading to a just and expeditious resolution of the actions to the benefit of not just some but all of the litigation's parties." *Ins. Brokerage Antitrust*, 360 F. Supp. 2d at 1372; *see also Checking Account Overdraft*, 626 F. Supp.2d at 1335. The common questions of fact that are implicated here weigh heavily in favor of consolidation and coordination. *See, e.g.*, *Aluminum*, 988 F. Supp. 2d at 363 (transferring related antitrust cases and finding centralization appropriate because "[a]ll actions share factual questions arising from allegations that defendants violated federal antitrust law . . .").

### 2. Transfer Will Serve the Convenience of the Parties and Witnesses and Will Promote the Just and Efficient Conduct of the Actions.

According to the Manual for Complex Litigation, the following four factors govern whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred cases: (1) the elimination of duplicative discovery; (2) the avoidance of conflicting rules and schedules; (3) the reduction of litigation cost; and (4) the conservation of the time and effort of the parties, attorneys, witnesses, and courts. Manual for Complex Litigation (Fourth), § 20.131, at 219.

In this litigation, there are currently eight pending actions in three different District Courts, and more actions are expected to be filed. Each Related Action involves virtually identical factual questions regarding Defendants' conduct and overlapping issues concerning impact upon plaintiffs and the classes they seek to represent. Similar allegations of anticompetitive conduct in each of the Related Actions necessarily require duplicative discovery and pretrial proceedings unless they are transferred and centralized in a single district for pretrial purposes. To prove the antitrust claims alleged in the Related Actions, plaintiffs in all those cases will seek from defendants the same types of documents and transactional data, and seek to depose many of the same defense and non-party witnesses. Consolidation or coordination will eliminate the likelihood of duplicative

discovery and proceedings that might result in inconsistent rulings and will prevent judicial resources from being needlessly wasted. *See In re Vioxx Prod. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005); *see also Aluminum,* 988 F. Supp. 2d at 363 (transferring related antitrust cases and finding centralization appropriate because "[a]ll actions share factual questions arising from allegations that defendants violated federal antitrust law . . ."); *In re: Treasury Auction Securities Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015) ("[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary."); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (concluding that consolidation was necessary to eliminate inconsistent pretrial rulings).

Further, there is no reason the parties should be required to respond to multiple pretrial motions and discovery requests, or for parties and witnesses to travel throughout the country to appear in multiple proceedings. Transfer and centralization will solve these problems: it will permit the transferee judge to craft a single, unified pretrial program that minimizes the inconvenience and overall expense for all parties and witnesses.

Without transfer, coordination, or consolidation of the Actions and tag-along cases, litigation will needlessly entail judicial inefficiency and unnecessary expense. Moreover, different federal courts, in duplicating rulings on the same issues, could make contradictory findings. Litigation of this scope and importance should not be beset with such inconsistencies and inefficiencies.

### B. The Central District of California is the Appropriate Transferee Forum

No specific location has emerged as the dominate site of common facts. However, it is important for the Panel's consideration here that Defendant Rouse Services LLC is headquartered in California. Rouse Services LLC is at the center of Plaintiff's alleged conspiracy as it is the

"hub" for hosting and exchange competitively sensitive information between and among all Defendants. It is also an important facilitator and an enforcer of the alleged conspiracy. Discovery upon Rouse Services LLC's employees and executives as well as its data colleting and sharing business practice are highly relevant to the litigation. These facts counsel for the transfer and consolidation of the Related Actions and any later-filed actions to the Central District of California. *See* Transfer Order, *In re TikTok Inc., Minor Privacy Litig*, No. 2:25-ml-03144-GW-RAO, ECF No. 1, at 2 (C.D. Cal. Apr. 3, 2025) (finding that the Central District of California is the "most appropriate transferee district" because "Two of the TikTok defendants are headquartered in the district, and it is undisputed that relevant documents and witnesses will be found there"); Transfer Order, *In re Consumer Vehicle Driving Data tracking Litig.,* No. 1:24-md-03115-TWT, at 2 (N.D. Ga. Jun. 7, 2024) (finding that a defendant's headquarters' location supports transfer of the related actions as "[r]elevant documents and witnesses, therefore, will be found there).

Other defendants, while not headquartered in California, all have a significant presence in California. In fact, all except for one of the Equipment Rental Company Defendants pick California as the state to operate the highest or the second highest number of their equipment rental stores among all other states. For instance, California has the highest number of stores among all the states in which Defendant Home Depot conduct its business.[6] Defendants Herc Rentals Inc. and Herc Holdings Inc. also operates the highest number of stores in California among all 44 states and territories in the U.S.[7] Similarly, Defendant EquipmentShare.com Inc. operates in 22 locations in California, making California the state with the second highest number

---

[6] https://www.statista.com/statistics/240037/total-number-of-home-depot-stores-by-country/.
[7] https://www.scrapehero.com/location-reports/Herc%20Rentals-USA/#:~:text=The%20state%20and%20territory%20with,Rentals%20locations%20in%20the%20US.

9

of store locations among the 43 states it operates its business.[8] Defendant Sunbelt Rentals, Inc. has a significant presence in California—among all of Sunbelt Rentals' 828 store locations, 10% of them are in California.[9] Defendant United Rentals, Inc. also choses California as the state to establish its 134 stores, which represent 10% of all of its stores in the 49 states.[10] 18% of Defendant Sunstate Equipment Co.'s are also located in California, making it the state with the second highest number of stores in which Sunstate operates its business.[11] California also ranks the third in terms number of stores operated within a state for Defendant H&E Equipment Services, Inc.[12]

The Central District of California is an accessible forum for many of the plaintiffs and witnesses who have been affected by Defendants' conduct. The Panel has taken ease of access into consideration as weighing in favor of a particular transferee forum.[13] The Central District of California, and Los Angeles, America's second largest city, is easily accessible by plane from any location and has ample accommodations for business travelers. The size of the city and infrastructure is certainly in place to host this MDL.

Further, the Central District of California has capable staff with a long history of successfully managing high-profile multidistrict litigation. The Central District of California's docket demonstrates that the court has the capacity to handle this litigation. For the fiscal year ending September 30, 2023, there were 10,688 pending civil cases and 596 weighted filings per

---

[8] https://www.equipmentshare.com/directory
[9] https://rentechdigital.com/smartscraper/location-reports/sunbelt-rentals-locations-in-united-states.
[10] https://www.unitedrentals.com/locations.
[11] https://www.sunstateequip.com/locations.
[12] https://he-equipment.com/locations;
[13] *See* Transfer Order, *In re Teflon Products Liability Litig.*, No. 4:06-md-01733, ECF No. .

judgeship.[14] In 2024, the median time from filing to disposition of civil cases in the Central District of California is 3.9 months, and from filing to trial 28.4 months, and there were 903 civil cases (8.4%) over three years old.[15] As for MDL experience, the District Court for Central District of California currently has 5 MDLs before 5 judges.[16] The clear capacity and capability to effectively and efficiently manage this matter supports transfer and consolidation of all Related Actions to the Central District of California.

Within the Central District of California, United States District Judge Monica Ramirez Almadani is an excellent and experienced jurist who can shepherd this litigation. Judge Almadani is currently presiding over Movant's case. Judge Almadani is an experienced jurist who was appointed to the bench in 2023. Judge Almadani is a fair, demanding but reasonable, extremely organized, and efficient judge well suited to preside over complex and multi-plaintiff, multi-defendant cases such as this one. Judge Almadani is not burdened with any other MDL litigation.

**III.     Conclusion**

For these reasons, Movant respectfully requests that the Panel grant this motion and transfer all the Related Actions, for coordinated or consolidated pretrial proceedings, to the Central District of California and assign them to the Honorable Monica Ramirez Almadani.

Dated: May 5, 2025

Respectfully submitted,

By: */s/ Michael J. Flannery*
Michael J. Flannery
CUNEO GILBERT & LaDUCA, LLP
Two City Place Drive

---

[14] Central District of California Annual Report of Caseload Statistics Fiscal Year 2023 (September 30, 2023), CACD_FY2023_Annual_Report.pdf.
[15] https://www.uscourts.gov/data-news/data-tables/2024/12/31/federal-court-management-statistics/n-a-1
[16] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-1-2025.pdf.

11

Second Floor
St. Louis, MO 63141
Telephone: (314) 226-1015
Mflannery@cuneolaw.com

Evelyn Riley
Daniel M. Cohen
Cody McCracken
CUNEO GILBERT & LaDUCA, LLP
4725 Wisconsin Ave. NW
Suite 200
Washington, DC 20016
Telephone: (202) 783960
cmcracken@cuneolaw.com

Marco Cercone
RUPP PFALZGRAF LLC
1600 Liberty Building
424 Main Street
Buffalo, NY 14202
Tel: (716) 854-3400
cercone@rupppfalzgraf.com

*Counsel for Mack's Junk Removal, LLC, and the putative classes*